UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

CARIBBEAN RESTAURANTS, LLC,

    **Plaintiff,**

       v.                                CIV. NO. 14-1200(PG)

BURGER KING CORPORATION,

    **Defendant.**

## OPINION AND ORDER

    Before the court is the defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to transfer venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404 ("Section 1404"). See Docket No. 37. For the reasons set forth below, the court **GRANTS** the defendant's motion.

### I. BACKGROUND

    Plaintiff Caribbean Restaurants, LLC (hereinafter "Plaintiff" or "Caribbean") is a Delaware limited liability company with its principal place of business located in Cataño, Puerto Rico. See Docket No. 1, ¶ 1. On the other hand, defendant Burger King Corporation (hereinafter "Defendant" or "BKC" or "Burger King") is a Florida corporation with its principal place of business located in Miami, Florida. Id. at ¶ 2. As it stems from the complaint, between May 24, 1976 and December 1, 2013, Caribbean, as franchisee, and BKC, as franchisor, entered into 182 franchise agreements pursuant to which BKC licensed to Caribbean the right to operate 182 Burger King restaurants in Puerto Rico. Id. at ¶ 7. The 182 Franchise Agreements are generally comprised of two forms of agreement: Forty-One (41) of the franchise agreements are the "Old Form Franchise Agreement" and One Hundred Forty-One (141) of the Franchise Agreements are the "New Form Franchise Agreement."

    On March 12, 2014, Caribbean filed the above-captioned diversity suit seeking damages and injunctive and declaratory relief. See Docket No. 1. In summary, Caribbean claims that BKC violated the Dealer's Contracts Act Law No. 75 of June 24, 1964 ("Law 75"), P.R. LAWS ANN. tit. 10, §§ 278 et seq., and breached some of the existing franchise agreements, the implied covenant of

good faith and fair dealing, and the obligation to negotiate in good faith. Id. Specifically, the controversy herein stems from Burger King's alleged attempt to take control over Caribbean's expenditure of funds for advertising, promotion and public relations.

To that effect, Section 9 (3)-(5) of the Old Form Franchise Agreement states:

> (3) **The Franchisee shall expend not less than four (4) percent of Gross Sales on advertising, promotion and public relations.** …

> (4) **If at any time there is more than one franchisee in Puerto Rico, Burger King shall have the right by notice to the Franchisee to bring the following subclause (5) into effect** in relation to all Franchise Agreements and new franchise agreements with the Franchisee in Puerto Rico including those assigned or transferred.

> (5) **The Franchisee shall by the fifteenth (15th) day of each month pay to Burger King or its designee,** in the currency of the country where the Franchised Restaurant is located, an amount calculated by applying the percentage stated in the Schedule to the Gross Sales for the preceding calendar month. **This sum, less administrative expenses and any applicable taxes, will be used for advertising, sales promotion and public relations for the benefit of the Franchised Restaurant including creative, production, media and clearance costs of advertising and sales promotion materials, and market research expenses directly related to the development and evaluation of the effectiveness of advertising and sales promotion.** Alternatively, Burger King may combine these moneys with payments from other Burger King Restaurants to form an ad fund which will be used on a fair and reasonable basis for advertising, sales promotion and public relations in Puerto Rico. The Franchisee is encouraged to participate in the planning of advertising, sales promotions and public relations for the Franchised Restaurant; however, all expenditures of such payment moneys shall be at the discretion of Burger King. In addition to the percentage of Gross Sales, the Franchisee agrees to transfer to Burger King or its designee for inclusion in the market fund for the area in which the Franchised Restaurant is located all advertising or promotional allowances given by suppliers of products which are sold in the Franchised Restaurant under a brand name such payment to be made to Burger King or its designee by the fifteenth (15th) day of the month following receipt of the said allowance.

See Docket No. 1-8 (emphasis ours). On the other hand, the Section 9.2 of the New Form Franchise Agreement states, in relevant part:

9.2. I Direct Expenditure Obligation. The Franchisee shall expend, in the country where the Franchised Restaurant is located, monthly advertising, sales promotion and public relation services for the benefit of Burger King Restaurants in the country where the Franchised Restaurant is located, including creative, production, media and clearance costs of advertising and sales promotion materials, and marketing research expenses directly related to the development and evaluation of the effectiveness of advertising and sales promotion. The amount expended for such advertising and sales promotion and public relations by the Franchisee will, at a minimum, be equal to the amount calculated by applying the advertising percentage stated in Schedule I to the Gross Sales for the preceding calendar month. Prior to hiring an advertising agency or issuing any promotion or advertisement, the Franchisee shall obtain the prior approval of BKC. At the request of BKC, the Franchisee shall provide BKC with a monthly and year-to-date accounting of all such expenditures together with other financial statements required pursuant to Section 10 below.

9.2.2 BKC's Right to Administer Funds. Notwithstanding the language in Subparagraph 9.2.1 above, **BKC and the Franchisee agree that at any time during the Term of this Agreement BKC may, in its sole and absolute discretion, require that the Franchisee, by the fifteenth (15th) day of each month, contribute into one or more advertising funds (collectively, the "Advertising Fund") at the location(s) and in the manner specified by BKC or its designee** from time to time and in the currency of the country where the Franchised Restaurant is located, an amount calculated by applying the advertising percentage stated in Schedule I to the Gross Sales for the preceding calendar month. Any monies contributed into the Advertising Fund under this Subparagraph shall be administered by BKC or its designee as provided in Subparagraph 9.2.3 below. In the event BKC requires and the Franchisee makes these contributions, the direct expenditure obligation of Subparagraph 9.2.1 above will be deemed fully satisfied.

See Docket No. 1-9 (emphasis ours).

According to the Plaintiff, BKC informed Caribbean on March 5, 2014 that the latter should imminently begin contributing all of its required monthly advertising expenditure, to wit, 4% of monthly gross sales from all of its 182 restaurants to Burger King. See Docket No. 1 at ¶¶ 26-27. Shortly thereafter, the Plaintiff filed suit claiming that Defendant's actions constitute a breach of contract and a violation of Law 75 to the extent they are in detriment to their established relationship.

In particular, the Plaintiff alleges that the Defendant has no right to take control of Caribbean's advertising funds or expenditures under the terms of all forty-one Old Form Franchise Agreements because Plaintiff is the only franchisee in Puerto Rico. Pursuant to the allegations in the complaint, other than Caribbean's 182 Burger King restaurants, the only other Burger King restaurant in Puerto Rico is located on a U.S. Army base and operated by the U.S. government, and is not a franchised restaurant as the term is used in the Old Form Franchise Agreement. Id. at ¶ 29.

The Plaintiff's claim that BKC failed to negotiate in good faith stems from the former's most recent round of refinancing of loans during which Defendant allegedly conditioned its required approval of the same to, among other things, Caribbean's relinquishment of control over the advertising funds, expenditures and activities. Id. at ¶¶ 19-22. Notwithstanding, Burger King supposedly announced that it was dropping its demand to seize control of Caribbean's advertising expenditures and activities during a meeting at its Miami headquarters on February 18, 2014, which lead Caribbean to believe that the 40-year status quo (Caribbean expending its own advertising funds and administering its own program) would continue to prevail indefinitely. Id. at ¶ 24. Yet, on March 5, 2014, after the refinancing transaction had already closed, the Plaintiff alleges that BKC retracted. Id. at ¶ 25.

Now, the Plaintiff alleges that it will suffer irreparable harm as a result of Burger King's issuance of a notice of default against Caribbean, which will result from Caribbean's refusal to allow Burger King to take control over the expenditure of funds for advertising, promotion and public relations. Id. at ¶¶ 30-31. This, in turn, would constitute an event of default under Caribbean's loan agreements, resulting in additional interest payments that would make it impossible for Caribbean to continue doing business. Id. at ¶ 32. Therefore, in addition to filing the above-captioned claim, the Plaintiff also filed a motion for temporary restraining order and preliminary injunction seeking that this court enjoin Burger King from declaring Caribbean to be in default or in breach of its agreements "for refusing to comply with Burger King's directive that, after 40 years, Caribbean begin paying its required monthly advertising expenditure sums to Burger King." See Docket No 3 at page31.

A hearing in this case took place on March 24, 2014, after which the court denied the Plaintiff's request for a temporary restraining order, see Docket No. 24, and a preliminary injunction hearing was set for April 21,

2014, see Docket No. 33. Prior to the scheduled preliminary injunction hearing, the Defendant moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively, to transfer venue to the Southern District of Florida. See Docket No. 37. At the time of the hearing, the Plaintiff's response to said motion was not yet due, and thus, the hearing was held. The parties discussed and set forth proof regarding the merits of the preliminary injunction and the applicability of the forum-selection provisions in the parties' agreements. Shortly after the hearing, the Plaintiff filed its response to the Defendant's request for a change of venue, see Docket No. 47, and the Defendant replied, see Docket No. 53.

## II. DISCUSSION

In its motion to dismiss, Burger King requests the dismissal of the above-captioned claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In support of its request, it cited the undersigned's ruling in MARPOR Corp. v. DFO, LLC, No. 10-1312(PG), 2010 WL 4922693 (D.P.R. December 02, 2010), where this court granted a motion to dismiss under Rule(b)(6) filed by a defendant seeking to enforce a forum-selection clause in the parties' agreement that stated that any litigation had to be brought in South Carolina. Alternatively, Defendant seeks that this court grant a transfer to the U.S. District Court for the Southern District of Florida based on the parties' contractual stipulation that said forum would constitute the exclusive venue for litigation between them. See Docket No. 37 at page 2. This alternative request is grounded on the United States Supreme Court's recent ruling in Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas, 134 S.Ct. 568 (2013), wherein the Supreme Court held that when parties have agreed to a valid forum-selection clause, that clause should be given controlling weight in all but the most exceptional cases, and a district court should ordinarily transfer the case to the forum specified in that clause, see id. at 581.

As part of its holding, the Supreme Court refused to consider whether a Rule 12(b)(6) motion was an appropriate mechanism to enforce a forum-selection clause, see id. at 580, but decidedly deemed that a motion to transfer under "§ 1404(a) and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." Id. Section § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties

have consented." 28 U.S.C. § 1404(a) According to the Supreme Court in Atlantic Marine, "Section 1404(a) therefore provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." Id. at 579. The Supreme Court found that "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." Id. at 580.

Historically, in the First Circuit of Appeals, "a motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed.R.Civ.P. 12(b)(6)." Silva v. Encyclopedia Britannica Inc., 239 F.3d 385, 387 (1st Cir.2001). Burger King filed such a motion here, but alternatively requested a transfer under Section 1404(a). Although, as noted, the Supreme Court specifically reserved the question whether a defendant may use a Rule 12(b)(6) motion to dismiss to seek enforcement of a forum-selection clause, the Supreme Court's holding was emphatic that a motion to transfer under Section 1404(a) was the appropriate mechanism for such a purpose when the clause, as here, specified another federal court as the appropriate venue. In light of this most recent holding, and having been presented with the alternative, the court will now treat the Defendant's motion as a motion to transfer under Section 1404(a) and analyze its request under the standard set forth in Atlantic Marine.

**A. Forum Selection Clauses**

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citing Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)). Absent a forum-selection clause, "a district court considering a § 1404(a) motion … must evaluate both the convenience of the parties and various public-interest considerations." Atlantic Marine, 134 S.Ct. at 581. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" Atlantic Marine, 134 S.Ct. at 581 (citing Stewart, 487 U.S. at 31). In such cases, the Supreme Court has concluded that "a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer," Atlantic Marine, 134 S.Ct. at 575. As a result,

"a proper application of § 1404(a) requires that a forum-selection clause be 'given controlling weight in all but the most exceptional cases.'" Id. at 579 (citing <u>Stewart</u>, 487 U.S. at 33).

The presence of a valid forum-selection clause requires district courts to adjust their usual analysis under Section 1404(a) in the following three ways:

> First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.
> …
> Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests.
> …
> Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules —a factor that in some circumstances may affect public— interest considerations.

Atlantic Marine, 134 S.Ct. at 582. In sum, "the party acting in violation of the forum-selection clause … must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer," <u>id.</u> at 583, insofar as "all private interests … weigh in favor of the transfer." <u>Id.</u> at 583-584.

The foregoing, however, presupposes that the parties have agreed to a "contractually valid forum-selection clause," Atlantic Marine, 134 S.Ct. at 581 n. 5, and so we must determine at the outset if the forum-selection clause here is in effect valid before entering into the required case-by-case analysis of the relevant public-interest factors.

The forum-selection clause in question here stems from the New Form Franchise Agreement and the "Restaurant Development Agreement dated June 30, 2010 …, pursuant to which Burger King granted to Caribbean the exclusive right to develop, open and operate Burger King restaurants in Puerto Rico for a term of twenty (20) years." Docket No. 1 at ¶ 12. Section 19.3 in the New Form Franchise Agreement and Article XX of the Restaurant Development Agreement provide as follows:

> Governing Law/Jurisdiction. This Agreement shall become valid when executed and accepted by BKC in Miami, Florida. This Agreement shall be governed by and construed in accordance with the laws of the State of

Florida, U.S.A. **The parties hereto acknowledge and BK agree that the United States District Court for the Southern District of Florida**, or if such court lacks jurisdiction, the 11th Judicial Circuit Court (or its successor) in and for Miami-Dade County, Florida, **shall be the exclusive venue and proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with this Agreement or related documentation and any other agreement between the parties, and the parties further agree that in the event of litigation arising out of or in connection with this Agreement or related documentation or any other agreement between the parties in these courts, they will not contest or challenge the jurisdiction or venue of these courts.**
Dockets No. 1-7, 1-9 (emphasis ours).

"The general rule is that forum selection clauses are *prima facie* valid." MARPOR, 2010 WL 4922693 at *3 (<u>citing</u> <u>M/S Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 10 (1972)). In this context, the Supreme Court has held that a party challenging a choice-of-forum clause would need to show "that the clause was invalid for such reasons as fraud or overreaching."[1] <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1119 (1st Cir.1993) (<u>citing</u> <u>Bremen</u>, 407 U.S. at 15). "Any alleged overreaching must be based on something more than the mere fact that the clause was a "boilerplate" provision printed on the back of a form contract." <u>Lambert</u>, 983 F.2d at 1119. Likewise, the fraud exception means that a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion." <u>Id.</u> at 1121 (<u>citing</u> <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 n. 14 (1974)).

In its motion to dismiss/transfer, the Defendant argues that there is no basis to deny enforcement of the forum-selection clause in this case insofar as the clause is "plainly mandatory" and the "Plaintiff does not claim that the forum clauses were obtained through fraud/undue influence." Docket No. 37

---

[1] In <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938), the Supreme Court held that federal courts sitting in diversity jurisdiction must apply state substantive law, but may apply federal procedural rules. Notwithstanding, "[f]ederal courts have long enforced forum selection clauses as a matter of federal common law." <u>Lambert v. Kysar</u>, 983 F.2d 1110, 1116 (1st Cir.1993) (citations omitted). Seeing as this diversity suit was filed in this district but all of the agreements in question contain Florida choice-of-law provisions, the court notes that both Puerto Rico and Florida have adopted federal common law standards regarding the enforceability of forum-selection clauses. <u>See</u> <u>Silva v. Encyclopedia Britannica Inc.</u>, 239 F.3d 385, 387 n. 1 (1st Cir.2001) (<u>citing</u> <u>Unisys Puerto Rico v. Ramallo Bros. Printing</u>, Inc., 128 P.R. Dec. 842 (1991)); <u>Manrique v. Fabbri</u>, 493 So.2d 437, 439 (Fla. 1986). Therefore, "as we discern no material discrepancy between … state law and federal law, we need confront neither the choice-of-law issue nor the daunting question whether forum selection clauses are to be treated as substantive or procedural for *Erie* purposes." <u>Lambert</u>, 983 F.2d at 1116 (<u>citing</u> <u>Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.</u>, 709 F.2d 190 (3rd Cir.1983) (declining to reach Erie issue because state law and federal law did not conflict)).

at page 9. The Plaintiff argues in response that this choice-of-forum clause is null and void insofar as it violates Law 75,[2] which provides, in relevant part, that "[a]ny stipulation that obligates a dealer to … litigate any controversy that comes up regarding his dealer's contract outside of Puerto Rico, or under foreign law or rule of law, shall be likewise considered as violating the public policy set forth by this chapter and is therefore null and void." P.R. LAWS ANN. tit. 10, § 278b-2.[3]

Unfortunately for the Plaintiff, this court has already rejected the argument they now advance "even when the case sets forth claims under [Law] 75." D.I.P.R. Mfg., Inc. v. Perry Ellis Intern., Inc., 472 F.Supp.2d 151, 155 (D.P.R.2007) (citations omitted) (finding parties were bound by valid and enforceable forum-selection clause in court action alleging violation of Law 75). "[T]he fact that a Puerto Rico statute prescribes the applicability of forum selection clauses does not mean that the Court will automatically disregard the parties' **freely-negotiated** contractual obligations." Diaz-Rosado v. Auto Wax Co., Inc., No. 04-2296, 2005 WL 2138794, at *2 (D.P.R. August 26, 2005) (emphasis ours) (quoting Royal Bed & Spring Co., Inc. v. Famossul Industria E Comercio De Moveis LTDA., 906 F.2d 45, 49 (1st Cir.1990) (finding valid and enforceable forum selection clause in exclusive distribution agreement under Act 75 designating Brazil as forum to litigate any action under agreement)). See also Nike Int'l, Ltd. v. Athletic Sales, Inc., 689 F.Supp. 1235, 1238 (D.P.R.1988) ("[T]he legislature [of Puerto Rico] did not intend that Law 75 be a safe haven for dealers to avoid the express terms of

---

[2] The Plaintiff's argument, however, presupposes that the protection afforded to dealers by Law 75 is triggered by the facts in the case at hand.

[3] In its response, the Plaintiff also contends that there is "no valid enforceable forum selection clause on which Defendant can rely with respect to forty-one (41) of the franchise agreements ("Old Form Franchise Agreements") at issue … ." Docket No. 47 at page 2. According to the Plaintiff, thus, the Defendant lacks a valid basis upon which to seek dismissal with regards to the claims that arise from the Old Form Franchise Agreement. First of all, this argument is inapposite to the question of whether the choice-of-forum clause is invalid because it fails to raise issues of fraud or overreaching, which are the only relevant factors in the determination of the validity of a forum-selection clause. Second, the Plaintiff's argument is unavailing to the extent the New Form Franchise Agreements and, more recently, the Restaurant Development Agreement signed by the parties stipulates that the United States District Court for the Southern District of Florida shall be the exclusive venue in which to adjudicate *any case or controversy* arising under or in connection with *any agreement between the parties*. This court agrees with the Defendant's argument in its reply, wherein it states that under both Puerto Rico and Florida law of contracts, the terms of the agreements are clear and should be interpreted to include all controversies, including those stemming from the Old Form Franchise Agreements. See Docket No. 53 at pages 3-4; see also Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564, 567 (1st Cir.1994) (citing P.R. LAWS ANN. tit. 31, § 3471 (1990)); Burger King Corporation v. Hinton, Inc., 203 F.Supp.2d 1357, 1361-1362 (S.D.Fla. 2002) (citing Murry v. Zynyx Mktg. Communications, 774 So.2d 714, 715 (Fla. 3d DCA 2000)).

the contracts to which they willingly subscribe."). "When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations. … In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain." <u>Atlantic Marine</u>, 134 S.Ct. at 583.

The record here is devoid of any allegation or evidence that the clause in dispute was the result of fraud or overreaching. Caribbean does not dispute that they freely chose to adopt the contracts. In fact, during the preliminary injunction hearing, Mr. Aniceto Solares ("Mr. Solares"), Caribbean's Chief Executive Officer and President and a sophisticated businessman, testified under oath that during the course of negotiations pertaining to the signing of the New Form Franchise Agreement, the Plaintiff's representatives were properly advised by legal counsel. Although he claims to have raised a concern regarding the presence of this forum-selection clause in the agreement to Plaintiff's attorneys and Burger King, the Plaintiff decided to go ahead and sign those agreements containing said clause despite whatever reservations he had. As a result, there are no allegations of fraud or overreaching that would lead this court to find that the forum-selection clause in both the New Form Franchise Agreements and the Restaurant Development Agreement was not valid for purposes of our analysis *infra*.

Having analyzed this threshold issue, the court must now consider the public-interest factors courts have found to be relevant to the analysis under Section 1404(a), which may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." <u>Id.</u> at 581 n. 6.

As to the first enumerated factor to consider, it is not unknown that "[t]he District of Puerto Rico has one of the most congested criminal and civil dockets in the nation." <u>Miranda-Lopez v. Figueroa-Sancha</u>, 943 F.Supp.2d 276, 279 (D.P.R. 2013). <u>See also</u> <u>Rivera-Carmona v. American Airlines</u>, 639 F.Supp.2d 194, 198 (D.P.R. 2009) ("Further, this Court is heavily congested with an ever expanding criminal docket."); <u>Marquez v. Drugs Unlimited, Inc.</u>, 737 F.Supp.2d 66, 68 (D.P.R. 2010)("In this extremely congested district, both on the civil and criminal dockets, it is thus extremely important for the court to effectively manage its caseload."). Therefore, this factor weighs heavily in favor of transfer.

As it pertains to having localized controversies decided at "home", the Plaintiff argues this factor favors this district because "this case concerns the economic interests surrounding advertising, marketing and promotions in the fast-food sector in Puerto Rico. Caribbean is a well-established company in Puerto Rico that provides its goods and services to a majority of the residents in Puerto Rico." Docket No. 47 at page 14. The court disagrees with the Plaintiff. This case is about a contractual dispute between Caribbean and Burger King that stems from the multiple agreements they have signed over the course of decades of business relationship, to wit, the Restaurant Development Agreement, the Old Form Franchise Agreements and the New Form Franchise Agreements, all of which state that they are executed and accepted in Miami, Florida and that they shall be governed by and construed in accordance with the laws of the State of Florida. See Article XX of Restaurant Development Agreement, Docket No. 1-7; Article 19(3) of Old Form Franchise Agreement, Docket No. 1-8; Article 19.3 of New Form Franchise Agreement, Docket No. 1-8. The fact that the Plaintiff's restaurants are in Puerto Rico is secondary to the crux of this case. Therefore, we find that for purposes of the interpretation of the parties' multiple contracts, "home" is in Miami, Florida.

Finally, regarding the interest in having the trial of a diversity case in a forum that is at home with the law, the Plaintiff argues that this court's familiarity with local law, Law 75 in particular, weighs against transfer. However, the court notes that all of the Franchise Agreements in question and the Restaurant Development Agreement contain Florida choice-of-law provisions. Therefore, if the Plaintiff was to have its way, this court would apply local law with regards to Plaintiff's Law 75 claim, but laws from another state as to the rest of its causes of action. Once again, this court disagrees with the Plaintiff. In light of the parties' freely-negotiated choice-of-law clause, we find that other than the Plaintiff's Law 75 *alleged* cause of action, Florida law applies to the parties' dispute. A federal judge in Florida would certainly be more familiar with Florida law than any federal colleague sitting in the District Court of Puerto Rico. And as to the Law 75 dispute, this district has previously held that:

> Although a court in Puerto Rico would surely be more familiar with Law 75, courts in one forum are oftentimes called upon to make rulings based upon the laws from another forum. Moreover, a transfer in the present case would not be the first time that a court outside of Puerto Rico has heard a Law 75 claim.

_Outek Caribbean Distributors, Inc. v. Echo, Inc._, 206 F.Supp.2d 263, 269 (D.P.R. 2002)(string citations omitted). Because "federal judges routinely apply the law of a State other than the State in which they sit," _Atlantic Marine_, 134 S.Ct. at 584, the court gives little weight to the Plaintiff's contentions regarding this court's familiarity with Law 75.

In sum, the court is unconvinced by the Plaintiff's arguments against enforcement of the forum-selection clause, and we thus find it has failed to meet its burden of establishing that transfer to the forum for which the parties freely bargained is unwarranted. Instead, the court finds that all relevant public-interest factors weigh in favor of transferring the present case to the United States District Court for the Southern District of Florida, Miami Division.

### III. CONCLUSION

For the reasons stated above, Defendant's motion (Docket No. 37) is hereby **GRANTED** and the Clerk of Court is ordered to transfer this case to the Southern District of Florida.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, June 3, 2014.


_S/ JUAN M. PEREZ-GIMENEZ_
JUAN M. PEREZ-GIMENEZ
SENIOR U.S. DISTRICT JUDGE